## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **ERIEN FRAZIER,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | **Case No.: 1:21-cv-2936-ADC** |
| ) | |
| **LVNV FUNDING, LLC, et al.** ) | |
| ) | |
| *Defendants.* ) | |

**DEFENDANT LVNV FUNDING, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AS TO PLAINTIFF ERIEN FRAZIER'S COMPLAINT**

## I.     INTRODUCTION

Plaintiff Erien Frazier ("Ms. Frazier") failed to satisfy her debt and fulfill her obligations regarding a credit card account and now attempts to hide behind a fictitious form of payment and then claim injury after her magic trick has failed.  This case should hopefully stand as precedent for other matters filed by deceptive litigants seeking to use documentation they conjured themselves to support their misgivings.

## II.     STATEMENT OF UNDISPUTED FACTS

1.     LVNV Funding, LLC ("LVNV") has no employees. *See* Exhibit 1, LVNV's Answers to Plaintiff's First Set of Interrogatories at No. 7.

2.     LVNV relies on Resurgent Capital Services ("RCS") as Master Servicer, via limited power of attorney, to service debt it owns, including the investigation of consumer disputes to comply with the Federal Credit Reporting Act ("FCRA").  *See* Exhibit 2, LVNV's Responses to Plaintiff's (Corrected) First Request for Production at No. 15; Exhibit 3, LVNV_000050–LVNV_000051.

1

3.      On or about May 11, 2016, Ms. Frazier of P.O. Box 25, Hagerstown, Maryland 21741, opened a Synchrony Bank/PayPal credit card ("Account" ending in 8314).  *See* Exhibit 4, LVNV_000056.

4.      Upon opening the Account, Ms. Frazier was provided with an Account Agreement. *See* Exhibit 5, LVNV000104-LVNV000110.

5.      The Account Agreement explains Ms. Frazier's responsibilities regarding the Synchrony Account.  *Id.*

6.      The Account Agreement includes a section titled, You Promise to Pay, which states: "You promise to pay us for all amounts owed to us under this Agreement."  *Id.* at LVNV_000105.

7.      The Account Agreement includes the payment options and in pertinent part states: "Your payment must be made in U.S. dollars by physical or electronic check, money order or similar instrument from a bank located in the United States."  *Id.* at LVNV_000106.

8.      The Account Agreement references credit bureau reporting: "We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be shown in your credit report."  *Id.*

9.      Further, the Account Agreement addresses assignment: "We may sell, assign or transfer any or all of our rights or duties under this Agreement or your account, including our rights to payments. We do not have to give you prior notice of such action."  *Id.*

10.     Ms. Frazier used the Account to make various purchases.  *See* Exhibit 6, Depo. of Erien Frazier at 86:15-21.

11.     Ms. Frazier made monthly payments on the Account through her online banking. *Id.* at 92:4-25.

12.     The Account Summary Report states that the last payment on the Account was received on March 14, 2019.  *See* Exhibit 4.

13.     On March 21, 2019, Ms. Frazier delivered a document titled Conditional Acceptance for Value and Counter Offer/Claim for Proof of Claim and Tender of Payment Offering ("Conditional Acceptance") to PayPal/Synchrony Bank.  *See* Exhibit 7, EIS-FRAZIER-000086-EIS-FRAZIER-000095.

14.     The Conditional Acceptance claims that the debt owed "concerns property of the United States" and is deemed a "government obligation."  *Id.*

15.     Further, the Conditional Acceptance claims that Ms. Frazier assigns obligation to the United States Treasury Department and presents an Equitable Remittance Coupon (the "Coupon").  *Id.*

16.     The Coupon was allegedly to cover the debt owed by Ms. Frazier in full despite being an insufficient amount to cover all amounts then outstanding.  *See* Exhibit 8, Plaintiff's Complaint at ¶ 12. [ECF 1]

17.     The Coupon states as follows:



*See* Exhibit 7 at EIS-FRAZIER-000087.

18.     The Coupon was not an acceptable form of payment as it was not noted on the Account.  *See* Exhibit 4.

19.     The Account was listed as late with credit reporting bureaus and on Ms. Frazier's consumer reports.  *See* Exhibit 8 at ¶ 13. [ECF 1]

20.     On or about mid-April 2019, Ms. Frazier contested the accuracy of the reporting of the Account with Experian, TransUnion and Equifax.  *Id.* at ¶¶ 15-16. [ECF 1]

21.     The Account charged off on October 16, 2019 with a balance of $2,184.50.  *See* Exhibit 4.

22.     On or about November 22, 2019, ownership of the Account, together with other accounts originating with Synchrony Bank, was transferred from one entity to LVNV.  *See* Exhibit 9, LVNV_000034-LVNV_000035.

23.     A letter dated December 13, 2019, was sent to Ms. Frazier providing her an update that the Account ending in -8314 had been sold.  *See* Exhibit 10, LVNV_000037.

24.     On or about January 22, 2020, Ms. Frazier sent a letter to "True Accord/LVNV" to dispute the debt owed and requested validation of the debt.  *See* Exhibit 11, LVNV_000192.

25.     On or about January 30, 2020, RCS sent a letter to Ms. Frazier in response to her inquiry.  *See* Exhibit 12, LVNV_000052-LVNV_000054.

26.     The letter contained an Account Summary Report, which is the result of RCS' investigation into Ms. Frazier's account and corresponding claims.  *See* Exhibit 4.

27.     On February 4, 2020, Ms. Frazier received an Experian alert that her account had been flagged as collections by LVNV.  *See* Exhibit 8 at ¶ 23.

28.     On or about March 18, 2020, Ms. Frazier delivered a document titled Conditional Acceptance for Value and Counter Offer/Claim for Proof of Claim and Tender of Payment

Offering ("Conditional Acceptance") to True Accord/LVNV Funding LLC. *See* Exhibit 13, LVNV_000207-LVNV000219.

29.     The Coupon states as follows:

| | |
|---|---|
| Erien-Lois: Frazier, a nontaxpayer as defined by statute<br>c/o post box 25<br>Hagerstown, Maryland [21741] | PPNBRZ-15924HOELFS1KSEDL-M00418732 – AW57742°<br>3-18-20 |

EQUITABLE REMITTANCE COUPON

"Pay and Pledged
To the Order of: TRUE ACCORD/LVNV FUNDING LLC. **WITHOUT RECOURSE"**

$ 2,184.00 xx

Amount of
Obligation: **TWO THOUSAND ONE HUNDRED EIGHTY-FOUR DOLLARS IN CERTIFIED** CREDIT BY A NONTAXPAYER AT PAR

INTENTIONS: The above United States government obligations is hereby accepted and acknowledged and I do assign and pledge the total value of the obligation to the United States of America through the United States Department of the Treasury to be redeemed for value and receivable at the Federal Reserve, the Federal Reserve Bank, and/or any member bank and/or National Association as prescribed by statute (the act of March 8, 1933; the act of May 12, 1933; 12 USC 411; 18 USC 8; UCC 1-308; 3-419 and the intentions of the United States Congress concerning THE CURRENT SERIOUS NATIONAL EMERGENCY), and credited to creditors account.

Memo: Discharging of Government Obligations # 47-04-4109-93895

Settlor and Interest Holder and Citizen of the United States of America

So the remedy provided by government for discharging government obligations is 12 USC 411, and I elect to use such a remedy.

*Id.* at LVNV_000217.

30.     The Coupon was not a valid form of payment nor a form of payment accepted by LVNV.  *See* Exhibit 14, LVNV_00061.

31.     On or about April 14, 2020, RCS responded to Ms. Frazier's inquiry – verified the debt and provided the result of its investigation, the Account Summary Report.  *See* Exhibit 15, LVNV000057-LVNV000059.

32.     On May 23, 2020, RCS again responded to another inquiry from Ms. Frazier – verified the debt and provided the result of its investigation, the Account Summary Report.  *See* Exhibit 14.

33.     Ms. Frazier created the Coupon herself from an online fillable template.  *See* Exhibit 6 at 127-131.

34.     The website SCRIBD contains a fillable equitable remittance coupon template.  *See* Exhibit 16, Depo. of Erien Frazier Exhibit 23.

35.     Ms. Frazier "made up" codes on the Coupon to make it unique to her.  *See* Exhibit 6 at 129:18-25, 130:1-10.

36.     According to Ms. Frazier, the Coupon is "an offer for a dialogue" which must be presented to the United States Treasurer for the United States Treasury (and not Ms. Frazier) to pay.  *Id.* at 49:6-13.

37.     Ms. Frazier attempted to use equitable remittance coupons with other creditors but they all ignored the coupons.  *Id.* at 98:20-25, 99:1-7.

## III.   <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56(c), a court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A genuine issue of material fact exists only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When reviewing a motion for summary judgment, the court must take all facts and inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party opposing summary judgment must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). The non-movant "'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v.*

*Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). Courts should enter summary judgment when a party fails to make a showing sufficient to establish elements essential to a party's claim or defense, and on which the party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322-23.

## IV.   ARGUMENT

### A.   LVNV IS NOT A "FURNISHER OF INFORMATION" SUBJECT TO LIABILITY UNDER 15 U.S.C. § 1681s-2(B)

Ms. Frazier has developed absolutely no evidence to establish that LVNV is subject to the requirements of 15 U.S.C. § 1681s-2(b). Instead, the record in this case shows that LVNV is not a "furnisher of information" as that term is defined under the FCRA. Only RCS transmitted information related to the Account to the CRAs. Accordingly, LVNV cannot be found liable under 15 U.S.C. § 1681s-2(b) and summary judgment in its favor is appropriate on the claim alleging violation of the FCRA.

Pursuant to 15 U.S.C. § 1681s-2(b), the duties of a furnisher of information upon notice of dispute are stated. It specifically states:

(1) In general. After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
   (A) conduct an investigation with respect to the disputed information;
   (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
   (C) report the results of the investigation to the consumer reporting agency;
   (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
   (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
      (i) modify that item of information;

(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

While the FCRA does not define the term "furnisher of information," relevant regulations recognize that a furnisher is "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 16 C.F.R. § 660.2. This definition is consistent with the interpretation of every court to have considered the term's meaning. *See, e.g.*, *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999) (defining "furnisher of information" as an entity "which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies."); *Martin v. Sallie Mae, Inc.*, No. 5:07-cv-00123, 2007 WL 4305607, at *9 (S.D. WV Dec. 7, 2007) (citing *Jarrett v. Bank of Am.*, 421 F. Supp. 2d 1350, 1352 n. 1 (D. Kan. 2006) (noting that "courts have defined the term as an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies")); *Saunders v. Equifax Info. Servs., L.L.C.*, No. 3:05CV731, 2006 WL 2850647 at *1 n. 1 (E.D. Va. Oct. 3, 2006) (internal citations omitted) (observing that, although "furnisher" is not defined by the FCRA, "the term is understood as including any entity…that provides information about its customers to…" CRAs); *Donley v. Nordic Properties, Inc.*, No. 99 C 4677, 2003 WL 22282523, at *5 (N.D. Ill. Sept. 20, 2003) (internal citations omitted) (noting that "[t]he federal courts have defined that term as an entity which transmits information concerning a particular debt owed by a particular consumer to consumer reporting agencies such as Experian, Equifax, MCCA, and Trans Union.").

Importantly, this term does not encompass other entities who might have an interest in the information furnished to the CRA. Instead, it only covers those entities that *themselves* transmit consumer information to the CRAs. *Strohbehn v. Access Group, Inc.*, 292 F. Supp. 3d 819, 829–30 (E.D. Wis. 2017); *Woods v. LVNV Funding, LLC*, No. 1:19-cv-03451, 2021 WL 1758952, at

*4–*5 (S.D. Ind. May 4, 2021). For example, it does not impose any legal duty, or liability for violation of that duty, on an entity who utilizes the services of a third-party to report information related to debt it owns. *Id.* This conclusion is compelled because "[t]he FCRA itself does not impose additional dispute resolution duties beyond the furnisher itself or otherwise provide for vicarious liability." *Strohbehn*, 292 F. Supp. 3d at 829; *see* 15 U.S.C. § 1681s-2(b). In other words, the statute's plain language governs; it only impose legal obligations on the entity that actually transmits information about a consumer to a CRA.

Here, there can be no legitimate dispute that LVNV did not furnish information to any CRA related to the Account. LVNV has no employees, takes no actions for itself, and neither controls nor directs any third-party to act on its behalf.  Because LVNV did not report any information to the CRAs related to the Account, LVNV cannot legally be considered a "furnisher." *Strohbehn*, 292 F. Supp. 3d at 829–30; *Woods*, 2021 WL 1758952, at *4–*5. It follows, therefore, that LVNV is not subject to the requirements of 15 U.S.C. § 1681s-2(b) and cannot be held liable for violation of legal obligations that never applied to it in the first instance. *Id*. As a result, this Court should enter summary judgment in LVNV's favor for Count I.

### B. THE UNDISPUTED FACTS ESTABLISH COMPLIANCE WITH 15 U.S.C. § 1681s-2(B)(1)(B)–(D)

If this Court finds that LVNV is vicariously liable for any alleged act or omission by LVNV's Master Servicer, which LVNV denies, there is still no evidence that can be put forth to support an argument that RCS failed to (1) review all relevant information provided by the CRAs to RCS or (2) report the results of its investigations to the CRAs. To the contrary, there is no genuine dispute that RCS reviewed all relevant information provided to by the CRAs and that it diligently reported the results of its investigations back to those entities and to Ms. Frazier.  Though

she disagrees with the results of the investigation, this does not provide the foundation for a claim under this statute. Accordingly, LVNV is still entitled to summary judgment on Count I.

### C.   EQUITABLE REMITTANCE COUPON

As stated *supra* on two separate occasions, in March 2019 and March 2020 respectively, Ms. Frazier presented a Conditional Acceptance for Value and Counter Offer/Claim for Proof of Claim and Tender of Payment Offering, which contained an Equitable Remittance Coupon, to pay off the Synchrony Account debt she owed. Ms. Frazier claimed that there was a contract created between the receiving party of the Conditional Acceptance and herself. *See* Exhibit 6 at 105-108. And, she stated that she used an online source, a fillable template, to create the Coupon. *Id.* at 45-49, 129-131. Ms. Frazier also made up codes on the Coupon to make it unique to herself. *Id.* Further, the Coupon is actually "an offer for dialogue" and more specifically "an offer to make the payment by an equitable remittance coupon." *Id.* at 49:6-13. Ms. Frazier admitted that she attempted to use a similar Coupon with other creditors, including electric, insurance, car payments but they have been ignored by everyone. *Id.* at 98:20-25, 99:1-7. And, despite this fact, she chose to attempt to use it here as well, which resulted in the same rejection. *Id.* at 127-131. Nevertheless, Ms. Frazier persists in her unsubstantiated claims that the debt was absolved by the improper Coupon and that any reporting of the debt is improper as a result. *Id.* at 39:7-14.

Ms. Frazier's machinations and creative efforts should not go unnoticed. Others similarly situated to her have tried to use such "conditional acceptance" documents and "coupons" to pay off debts and courts are calling out these ludicrous tactics. First, US District Courts have found that failure to respond to a document similar to the Conditional Acceptance did not result in a valid and binding agreement between the parties. *Kahapea v. Hawaii State Fed. Credit Union*, No. CV 20-00281 LEK-KJM, 2021 WL 4267506, at *6 (D. Haw. Sept. 20, 2021). Next, courts have taken

notice of these funky equitable remittance coupons.  In a New York bankruptcy proceeding, the

court deemed the debtor's attempt to "obligate the United States Government to repay her loan by

submitting an 'Equitable Remittance Coupon'" was a vexatious and frivolous filing.  *Simon v.*

*Bank of Am., N.A.*, No. 19-CV-3498 (JMA), 2021 WL 148650, at *8 (E.D.N.Y. Jan. 15, 2021).

And, an Eastern District of Pennsylvania court found a plaintiff's claims frivolous where he sought

to pay his water, gas and electric bills with a "Government Obligations Remittance Coupon. *Miller*

*v. Exelon*, No. 19-CV-0231, 2019 WL 952273, at *1 (E.D. Pa. Feb. 26, 2019).  The court found

that "coupons," which are modeled to appear like a bank check, include the memo "Discharging

of Government Obligations" and states the following:

> INTENTIONS: The above United States government obligations is hereby
> accepted and acknowledged, and I do assign And pledge the total value of the
> obligation to the United States of America through the United States Department
> Of the Treasury to be redeemed for value and receivable at the Federal Reserve, the
> Federal Reserve Bank, And/or any member bank and/or national Association as
> prescribed by statute (the act of March 9th, 1933; the Act of May 12, 1933; 12 USC
> 411; 18 USC 8; UCC 1-308, 3-419, and intentions of the United States Congress
> concerning THE CURRENT SERIOUS NATIONAL EMERGENCY).

*Id.* The court found plaintiff's claim, that defendants were somehow liable to him because they

refused to accept his coupons, to be frivolous. *Id.*  Further, the court likened such argument to

those that have previously failed and which lack merit.  *See, e.g., Marvin v. Capital One*, No. 16-

2307, 2017 WL 4317143, at *1 (6th Cir. June 6, 2017) (dismissal of complaint was proper where

plaintiff "[a]fter deciding that 'there is no lawful money,' ... ceased paying his credit card bills and

instead sent defendant a document of his own devising, on blue paper, that he called a 'bonded

promissory note' " and "[t]he complaint contained no factual allegations showing that defendant's

refusal to accept [plaintiff's] documents as payment of his debt gave rise to a claim"); *Coppedge*

*v. Deutsche Bank Nat. Tr.*, 511 F. App'x 130, 133 (3d Cir. 2013) (where plaintiff alleged among

other things that there was no lawful money, stating "we note that Coppedge's sovereign-citizen-

based averments, which frequently rely on attacks on the judiciary and invocations of alchemistic, archaic, and irrelevant formalism, are unlikely to bring him relief in *any* court of law, and he would be wise to direct his energies in a more productive direction"); *United States v. Scully*, 798 F.2d 411, 413 (10th Cir. 1986) (finding defendant's argument that "the district court could not order restitution as part of his sentence because there is no 'lawful money' in the United States" to be "without any legal merit").

Here, the crux of Ms. Frazier's remaining claims are based upon the false premise that there is no debt because it was discharged by the Coupon.  But, in actuality, as in the cases cited, the use of the Equitable Remittance Coupon could not and did not satisfy the Account debt. Nevertheless, Plaintiff attempted to use the Coupon again when she sent it to LVNV in March 2020.  Subsequently, these actions led to her defaulting on her obligations, her account being reported to CRAs as late, and the account subsequently referred to collections.  Ms. Frazier's own ridiculous actions led her account to its current state.

     **D.**     THE UNDISPUTED FACTS SUPPORT DISMISSAL OF MS. FRAZIER'S FAIR DEBT COLLECTION PRACTICES ACT, MARYLAND DEBT COLLECTION ACT AND DEFAMATION CLAIMS.

     **i. Fair Debt Collection Practices Act ("FDCPA")**

The purpose of the FDCPA was "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  *See* 15 U.S.C. § 1692(e).  Here, Ms. Frazier alleges that LVNV "used false means to collect when it did not have a right to", "sent a debt collection letter to Plaintiff in an attempt to collect an alleged but non-existent debt", "furnished information to the consumer reporting agencies in order to collect a non-existent debt."  *See* Complaint at ¶¶

45-47.  In general, her claim boils down to her claim that LVNV attempted "to collect on an alleged but non-existent debt."  *Id.* at ¶ 48.

But, the main issue is that Ms. Frazier refuses to acknowledge that the Coupon was not an acceptable form of payment, nor was it sufficient to pay the outstanding balance on the account at the time of submission even if it were a proper form of payment. Nevertheless, the debt is a valid and binding financial obligation owed to LVNV. Because this debt is valid, this rebuts Ms. Frazier's allegation that LVNV is attempting to collect a "non-existent debt."  Thus, Count II of the Complaint should be dismissed with prejudice.

### ii. Maryland Consumer Debt Collection Act ("MCDCA")

Maryland's Consumer Debt Collection Act provides that "[i]n collecting or attempting to collect an alleged debt a collector may not: (8) Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202.  Further, the MCDCA generally prohibits unfair or deceptive debt collection practices.  Similar to her claim under the FDCPA, Ms. Frazier claims that there is no right for LVNV to enforce the collection of alleged debt because the debt was nonexistent due to the already-debunked Coupon.  As stated above, the Synchrony Account debt is valid and is owed LVNV.  Thus, Count III of the Complaint should be dismissed with prejudice.

### iii. Defamation – Libel

To succeed on a defamation claim, Plaintiff must establish:

1. That the defendant made a defamatory statement to a third person;
2. That the statement was false;
3. That the defendant was legally at fault in making the statement, and
4. That the plaintiff thereby suffered harm.

*Offen v. Brenner,* 402 Md. 191, 198, 935 A.2d 719, 723–24 (2007).  Further, "A defamatory statement is one 'which tends to expose a person to public scorn, hatred, contempt or ridicule,

thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Batson v. Shiflett,* 325 Md. 684, 722–23, 602 A.2d 1191, 1210 (1992).

Here, Ms. Frazier alleges that LVNV furnished false and inaccurate information on her consumer report and made false claims regarding the alleged delinquent account in written reports to the CRAs. Again, LVNV did not engage in any furnishing activity under the FCRA and, even if it is deemed to be liable for the acts or omissions of RCS, the alleged defamatory statement concerns true statements about a valid debt which has been verified. Accordingly, Count IV of the Complaint should be dismissed with prejudice.

## V.      CONCLUSION

WHEREFORE, for the foregoing reasons and those which may be offered at oral argument of this Motion, LVNV Funding, LLC respectfully requests that this Honorable Court grant its Motion for Summary Judgment and enter judgement in its favor.

Dated:  December 5, 2022

    ___/s/ Jonathan A. Barnes_____
Jonathan A. Barnes, Esquire (Fed. Bar # 19384)
GORDON REES SCULLY MANSUKHANI, LLP
1101 King Street, Suite 520
Alexandria, VA 22314
202.399.1009
202.800.2999 (Facsimile)
jbarnes@grsm.com
*Counsel for Defendant LVNV Funding, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 5th day of December, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to all registered CM/ECF participants.  I will also send a copy via U.S. Mail postage prepaid to:

Erien Frazier
P.O. Box 25
Hagerstown, MD 21740
*Plaintiff*


     /s/ *Jonathan A. Barnes*
Jonathan A. Barnes, Esquire