# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **ERIEN FRAZIER,** | * | |
| **Plaintiff,** | * | |
| v. | * | **CIVIL NO. JKB-21-2936** |
| **LVNV FUNDING, LLC et al.,** | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

*Pro se* Plaintiff Erien Frazier filed a Complaint against several Defendants, including Equifax Information Services LLC ("Equifax") and LVNV Funding, LLC ("LVNV"),[1] bringing Fair Credit Reporting Act ("FCRA"), Fair Debt Collection Practices Act ("FDCPA"), and Maryland state law claims. (Compl., ECF No. 1.) Pending before the Court are Equifax's Motion for Summary Judgment (ECF No. 67); LVNV's Motion for Summary Judgment (ECF No. 68); and Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 70). The Motions are ripe for disposition and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, the Court will grant Equifax and LVNV's Motions for Summary Judgment and deny Plaintiff's Motion for Leave to File an Amended Complaint.

## I.   *Factual and Procedural Background*[2]

Plaintiff had an outstanding credit card balance with Synchrony Bank and she alleges that, on March 17, 2019, she "tendered a payment in full to Synchrony Bank for a credit card account

---

[1]   Plaintiff's claims against Experian and Trans Union have been dismissed. (ECF Nos. 37, 39.)

[2]   Plaintiff did not file an opposition to the Motions for Summary Judgment. The facts are largely taken from her original Complaint, unless otherwise noted.

1

balance in the amount of $1700." (Compl. at ¶ 12.) In a document attached to her Complaint, styled as an affidavit, she explains that she "mailed Paypal/Synchrony Bank a Conditional Acceptance Contract" and "[t]hat contract included an 'Equitable Remittance Coupon' for the purpose of tendering payment for [an account] in the amount of $1700." (ECF No. 1-3 at 1.)

Plaintiff elaborated on the purpose of an "equitable remittance coupon" in her deposition, portions of which are attached to Equifax's Motion for Summary Judgment. (ECF No. 67-3 at 90–194.) She testified that "you can just make" an equitable remittance coupon and that, by providing such coupon to a bank, an individual "can assign their debts to the government" and that "it has to do with the fact that the gold standard was removed from the monetary system." (*Id.* at 105, 107, 108.) The following exchange captures her position regarding the effect of an equitable remittance coupon:

> Q. Right. Your position is that Synchrony could have taken the document that you generated to the US Treasury and somehow obtained $1,700 on your behalf from the US government instead?
>
> A. Right.

(*Id.* at 109.) Plaintiff does not claim that she otherwise tendered payment with respect to her loan from Synchrony Bank.

Plaintiff alleges that Synchrony Bank "failed to post payment in full for that month but instead listed the account as late on Plaintiff's consumer reports[,]" and, as a result, her credit score dropped. (Compl. ¶¶ 13–14.) Beginning in mid-April 2019, she notified Equifax, Experian, and Trans Union of the "inaccurate information being furnished by Synchrony Bank." (*Id.* ¶ 15.) She explains that "[f]or several months, letters went back and forth between the [credit reporting agencies] and Plaintiff as Plaintiff tried to correct the inaccurate information being furnished" but

that all of her "disputes . . . came by as 'verified'."[3] (*Id.* ¶¶ 16–17.) In December 2019, the Synchrony Bank debt was transferred to Sherman Originator III LLC and was then sold to LVNV. (*Id.* ¶¶ 22–23; ECF No. 67-2 ¶¶ 32–33.)

Plaintiff alleges that around February 4, 2020, she received an "Experian alert that LVNV Funding, LLC had begun furnishing a collections account on [her] consumer report." (Compl. ¶ 23.) She further alleges that, around February 15, 2020, her Experian "consumer score dropped 164 points" and that, on February 21, 2020, her application with the Amalgamated Bank of Chicago was denied. (*Id.* ¶ 24–25; ECF No. 1-1 (exhibit reflecting a credit score based on "Experian data Feb 15, 2020").) Plaintiff alleges that she "again sent notices of dispute to Experian, Trans Union, and Equifax and requests for reinvestigation" and that she "sent LVNV Funding LLC several disputes and requests for validation of the alleged debt." (*Id.* ¶¶ 26–27.) She also alleges that she attempted to contact other "entities attempting to collect the alleged debt for LVNV Funding, LLC" but that she received no response and that LVNV "continued to furnish false information monthly to the consumer reporting agencies." (*Id.* ¶ 30–33.) Further, Plaintiff alleges that—although Trans Union and Experian "deleted the inaccurate information" in September 2020—Equifax "refuses to remove the inaccurate trade-line." (*Id.* ¶¶ 34–36.)

Plaintiff alleges that Equifax violated FCRA by violating 15 U.S.C. § 1681e(b) (Count XV), 15 U.S.C. 1681i(a) (Count XVI), and 15 U.S.C. § 1681i(c) (Count XVII); violated the Maryland Consumer Credit Reporting Agencies Act ("MCRA"), Maryland Commercial Code § 14-1208 (Count XVIII); and defamed her (Count XVIV). (*Id.* ¶¶ 122–51.) Plaintiff alleges that LVNV violated FCRA by violating 15 U.S.C. § 1681s-2(b) (Count I); violated the FDCPA by

---

[3] Equifax explained that "Synchrony responded" to Equifax's queries regarding the accuracy of Plaintiff's debt and that Synchrony "verified each time that the information about the Synchrony tradeline was accurate." (ECF No. 67-1 at 16.)

3

violating 15 U.S.C. § 1692e(11) (Count II); violated Maryland Commercial Code § 14-202(8) (Count III); and defamed her (Count IV). (*Id.* ¶¶ 37–61.)

## II. *Legal Standards*

### A. Motion for Summary Judgment

Federal Rule of Civil Procedure 56 provides that a party can move for summary judgment on a "claim or defense—or the part of [any] claim or defense," provided it shows "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If a party carries this burden, then the Court will award summary judgment, unless the opposing party can identify specific facts, beyond the allegations or denials in the pleadings, that show a genuine issue for trial. Fed. R. Civ. P. 56(e). If sufficient evidence exists for a reasonable factfinder to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented, and summary judgment will be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252.

### B. Motion for Leave to Amend a Complaint

Federal Rule of Civil Procedure 15(a) governs the standard for amending pleadings before trial and provides that "[a] party may amend its pleadings once as a matter of course" under circumstances not applicable here. Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). A court "may deny leave to amend for reasons 'such as undue delay, bad faith or dilatory motive on the part of the movant,

4

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 480 (4th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Further, once a scheduling order has been entered in a case, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). As the Fourth Circuit has explained:

> Rule 15(a)(2) articulates a relatively liberal amendment policy, in which leave to amend should be "freely give[n] when justice so requires." That rule applies, however, prior to the entry of a scheduling order, at which point, under Rule 16(b)(4), a party must first demonstrate "good cause" to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.

*Cook v. Howard*, 484 F. App'x 805, 814–15 (4th Cir. 2012).

### III. Analysis

LVNV and Equifax each filed a Motion for Summary Judgment, which will be granted. Plaintiff filed a Motion for Leave to File an Amended Complaint, which will be denied.

#### A. Equifax's Motion for Summary Judgment

Equifax argues that the Court should grant summary judgment in its favor for several reasons. Equifax's Motion for Summary Judgment will be granted.

Plaintiff does not have standing to bring her FCRA claims against Equifax, as Equifax did not disseminate her allegedly inaccurate credit report to any third parties. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) (explaining that "[t]he mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm" for purposes of Article III standing). For instance, although Plaintiff alleges that her application with the Amalgamated Bank of Chicago was denied, there is no evidence that Equifax provided the credit report that formed the basis of this denial. Indeed, during her deposition, Plaintiff testified that it

5

was "probably" *Experian* that provided the relevant credit report. (ECF No. 67-3 at 117.) Further, her allegations relating to her lowered credit score indicate that the credit score data was from Experian, not Equifax. (ECF No. 1-1 (exhibit reflecting a credit score based on "Experian data Feb 15, 2020").) Plaintiff has also alleged "loss of credit, loss of the ability to purchase and benefit from credit, denial of credit, mental and emotional pain and anguish and the humiliation and embarrassment of credit denials[.]" (Compl. ¶ 94, 103.) However, "absent allegations that the score was disseminated to a third party, or specific allegations describing how the score detrimentally affected [her] ability to participate in the marketplace, an artificially reduced credit score alone does not constitute a concrete injury after *TransUnion*." *Evans v. Am. Collection Enter.*, Civ. No. JKB-22-0746, 2022 WL 3923394, at *6 (D. Md. Aug. 31, 2022). Thus, Plaintiff does not have standing to bring her FCRA claims against Equifax and those claims must be dismissed. Her MCRA claim is dismissed for the same reason. *See Alston v. Cent. Credit Servs., Inc.*, Civ. No. DKC-12-2711, 2013 WL 4543364, at *2 n.3 (D. Md. Aug. 26, 2013) ("Because the [MCRA] contains virtually identical provisions to the FCRA, the Fourth Circuit has addressed separate claims brought under both the [MCRA] and FCRA as one.").

In addition, Plaintiff's defamation claims are preempted by FCRA and must likewise be dismissed. *See* 15 U.S.C. § 1681h(e) (providing that "no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency . . . except as to false information furnished with malice or willful intent to injure such consumer").[4]

---

[4] Further, even if it were not preempted, the Court would dismiss Plaintiff's defamation claim, as one element of defamation is "that the defendant made a defamatory statement to a third person," *Piscatelli v. Van Smith*, 35 A.3d 1140, 1147 (2012), and, as noted, there is no evidence that Equifax provided her credit score to a third party. In

Even if Plaintiff had standing to bring her FCRA and MCRA claims, her claims against Equifax fail for at least two additional reasons. First, her FCRA claims are subject to its statute of limitations, which provides that claims must be brought "not later than the earlier of (1) two years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) five years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. Plaintiff alleges that she first contacted Equifax to dispute the Synchrony Bank debt in mid-April 2019, (Compl. ¶ 15), and that "[o]n May 13, 2019, Equifax sent [her] their dispute results indicating that the 'information [she] disputed has been updated' and 'verified as accurate.'" (ECF No. 1-3.) However, she did not file her Complaint until November 16, 2021, several months outside of the two-year statute of limitations.

Second, and perhaps most obviously, Plaintiff has not paid the debt she owes to Synchrony Bank, and her claims all fail for this independent reason. Plaintiff's claims require her to prove that there was some inaccuracy or falsity with respect to Equifax's reporting of her debt. *See Johnson v. Experian Info. Sols., Inc.*, Civ. No. PWG-15-558, 2015 WL 7769502, at *8 (D. Md. Nov. 17, 2015), *aff'd*, 670 F. App'x 778 (4th Cir. 2016) ("To establish either a Reasonable Procedures Claim [under 15 U.S.C. § 1681e] or a Reinvestigation Claim [15 U.S.C. § 1681i], a plaintiff must demonstrate that the consumer report prepared by the credit reporting agency contains inaccurate information."); *Brown v. Experian*, JKB-12-2048, 2012 WL 6615005 at * 3 (D. Md. Dec. 17, 2012) ("In order to state a claim for failure to comply with § 1681e(b), Plaintiff must allege that a consumer report contained inaccurate information. The same is true of § 1681i(a).").

---

addition, as discussed below, Plaintiff has not shown that there was an inaccuracy with respect to her credit report, and one element of defamation is "that the statement was false." *Id.*

In short, there is no evidence that Equifax's credit reporting was inaccurate, that any statements relating to Plaintiff's debt or her credit score were false, or that she did not owe the debt related to her Synchrony Bank account. She tendered an "equitable remittance coupon" to Synchrony Bank, a document that purported to assign her debts to the United States Government. This coupon is plainly not an acceptable form of legal tender, and Plaintiff has not presented any evidence that she otherwise paid her Synchrony Bank debt. Predictably, Synchrony Bank reported her debt as unpaid and that debt was reported to credit reporting agencies and ultimately went to collections. Given this factual context, Plaintiff's claims fail for this additional reason.

Therefore, Plaintiff's claims against Equifax will be dismissed for lack of standing. Even if Plaintiff had established standing, the Court would grant summary judgment in Equifax's favor against all of Plaintiff's claims against it, including Plaintiff's FCRA, MCRA, and Maryland defamation claims.

### B. LVNV's Motion for Summary Judgment

LVNV argues that the Court should grant summary judgment in its favor for several reasons. LVNV's Motion for Summary Judgment will also be granted.

Plaintiff's claims fail against LVNV for several reasons, including that—as noted above—she simply did not pay the debt she owed to Synchrony Bank. Each of her claims against LVNV, like her claims against Equifax, require her to show that there was some inaccuracy or falsity with respect to LVNV's attempts to collect her debt. *See Mitchell v. Bayview Loan Servicing, LLC*, Civ. No. 20-1163-PWG, 2021 WL 4148561, at *9 (D. Md. Sept. 13, 2021) ("[Defendant's] duty under the FCRA was to provide accurate information. Because [Defendant] provided accurate

8

information, the FCRA claim fails." (citing 15 U.S.C. § 1681s-2b)); 15 U.S.C. § 1692e(2)[5] (prohibiting a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" including falsely representing "the character, amount, or legal status of any debt"); *Piscatelli*, 35 A.3d at 1147 (providing the elements of a defamation claim under Maryland law, including "that the statement was false"); *Chavis v. Blibaum & Assocs., P.A.*, 264 A.3d 1254, 1265 (Md. 2021) (explaining that a Maryland Code § 14-202(8) claim requires that a plaintiff establish that: "(1) the debt collector did not possess the right to collect the amount of debt sought; and (2) the debt collector attempted to collect the debt knowing that [it] lacked the right to do so" (quotations and citation omitted)).

Again, the record establishes that Plaintiff tendered an invalid form of payment and apparently expected her debt to Synchrony Bank to be forgiven. Therefore, the Court will grant summary judgment to LVNV on all of Plaintiff's claims against it.

### C. Plaintiff's Motion for Leave to File an Amended Complaint

Plaintiff has filed a Motion for Leave to File an Amended Complaint. (ECF No. 70.) Her Proposed Amended Complaint adds two new defendants, Resurgent Capital Services and Daniel Picciano (Vice President of Resurgent Capital Services), and includes additional factual allegations. (*See generally* ECF No. 70-1.) Although Plaintiff did not file any opposition to the Defendants' Motions for Summary Judgment, she notes that she "seeks to amend her Complaint to address the[] allegations" in Defendants' Motions and to "provide additional relevant statements of fact." (ECF No. 70 at 2.) Plaintiff explains that the Court should grant her Motion, as

---

[5] Plaintiff alleges that LVNV "violated 15 U.S.C. § 1692e(11) by using false means to collect a debt when it had no legal right to do so." (Compl. ¶ 45.) However, 15 U.S.C. § 1692e(11) requires that certain disclosures be made in communications with customers, and Plaintiff does not allege any facts that suggest a failure by LVNV to make disclosures in connection with its communications with her. Accordingly, the Court construes her claims as arising under 15 U.S.C. § 1692e(2).

9

Defendants will not be prejudiced, she is not acting in bad faith, and allowing the amendment would not be futile. (*Id.* at 3.) The Court will deny Plaintiff's Motion.

As noted above, Rule 15(a)(2)'s "relatively liberal amendment policy . . . applies . . . prior to the entry of a scheduling order" and, after such order has been entered, "a party must first demonstrate 'good cause'" under Rule 16(b)(4) "to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment." *Cook*, 484 F. App'x at 814–15. The Court did not set a deadline for the amendment of pleadings. (*See generally* ECF No. 28.) However, the Court set a deadline for the submission of a status report discussing, *inter alia*, "whether or not any party intends to file motions." (*Id.*) "As is the case here, when a scheduling order does not impose a specific deadline to amend pleadings, Rule 16 nevertheless applies if granting leave to amend would interfere with the timeline set in the applicable scheduling order." *Carlisle v. Allianz Life Ins. Co. of N. Am.*, 540 F. Supp. 3d 567, 571 (E.D. Va. 2021).

Plaintiff offers no explanation for her late filing, nor for her failure to alert the Court that she intended to file a Motion for Leave to File an Amended Complaint in the parties' status report. She explains that she "seeks to amend her Complaint to address" the Defendants' arguments in their Motions for Summary Judgment "and provide additional relevant statements of fact." (ECF No. 70 at 2.) However, she does not provide any reason why this filing comes at such a late stage of the litigation, nearly four months after the close of discovery. This is plainly insufficient under the Rule 16 "good cause" standard for allowing such an amendment.

Moreover, the Court would deny Plaintiff's Motion under Rule 15 even if the good cause standard from Rule 16 did not apply. First, the amendment would be futile. At base, although Plaintiff makes some additional factual allegations and adds two new defendants, she continues to allege that the equitable remittance coupon somehow absolved her debt. Second, there appears to

10

be "undue delay" and "dilatory motive" on the part of Plaintiff. *See Glaser*, 464 F.3d at 480. Plaintiff filed her Motion for Leave to File an Amended Complaint on January 9, 2023, almost four months after discovery had closed. She provides no reason for this delay, and the delay appears to be for the purpose of delaying judgment in this case, particularly given that she filed this Motion rather than filing any opposition to Equifax and LVNV's Motions for Summary Judgment.[6] *See Dexter v. Lake Creek Corp.*, Civ. No. 10-226-D, 2013 WL 1898381, at *9 (E.D.N.C. May 7, 2013) (denying a motion for leave to file an amended complaint where the motion came "nearly twenty-two months after the original complaint, four months after the close of discovery, and after the deadline for filing dispositive motions" and where plaintiffs "[i]nexplicably" "waited four months after" the discovery of information to add certain defendants); *Berenyi, Inc. v. Nucor Corp. by & through Berkeley Div.*, Civ. No. 20-03170-DCN, 2022 WL 2719820, at *5 (D.S.C. July 13, 2022) ("Courts look disfavorably upon motions to amend brought for the purpose of circumventing dispositive motions. Indeed, several courts in this circuit have denied a plaintiff's motion to amend . . . where the timing of the motion suggested that the primary purpose was to avoid summary judgment."). Third, allowing the amendment would prejudice Defendants where, as here, Plaintiff attempts to advance additional facts and allegations and discovery is long since completed. *See id.* ("Since the purpose of the rules governing pleading and discovery is to put the opposing party on notice about the underlying basis of each side's case, that purpose may be defeated if the plaintiff waits until after discovery and

---

[6] This is not the first time in the life of this case that Plaintiff has appeared to stall its resolution. For example, Plaintiff filed a Motion to Extend Discovery in which she incorrectly stated that she had received the Defendants' consent to request an extension of the discovery deadline. (*See* ECF Nos. 49, 50, 53, 56.) She also filed a Motion to Compel, seeking an order compelling discovery. (ECF No. 52.) The Court denied that Motion, finding that she was seeking discovery that was irrelevant to her claims. (ECF No. 66.)

after motions for summary judgment have been filed to alter its theory of the case." (citation and quotations omitted)).

Therefore, the Court will deny Plaintiff's Motion for Leave to File an Amended Complaint.

## IV.   *Conclusion*

For the foregoing reasons, Equifax's Motion for Summary Judgment (ECF No. 67) will be granted; LVNV's Motion for Summary Judgment (ECF No. 68) will be granted; and Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 70) will be denied.

DATED this 28 day of April, 2023.

BY THE COURT:

/s/ James K. Bredar

James K. Bredar
Chief Judge